# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES S. MCCLEOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-366-JHP-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff James S. McCleod (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on November 11, 1961 and was 52 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as a truck driver, carpet layer, and fork lift driver. Claimant alleges an inability to work beginning October 5, 2010 due to limitations resulting from ischemic heart disease, cervical spine disorder, lumbosacral spine disorder, carpal tunnel syndrome, and high blood pressure.

3

**Procedural History**

On December 9, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 10, 2014, an administrative hearing was conducted by Administrative Law Judge ("ALJ") J. Frederick Gatzke in McAlester, Oklahoma. The ALJ entered an unfavorable decision on June 6, 2014. The Appeals Council denied review on August 24, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to conduct a proper credibility determination; (2) reaching an erroneous RFC; and (3) failing to fully develop the record.

## Credibility Determination

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, lumbar degenerative disc disease, bilateral carpal tunnel syndrome, hypertension, coronary artery disease, and mild systolic heart failure. (Tr. 15). The ALJ concluded that Claimant retained the RFC to perform light work except he was limited to no crawling, no climbing of ladders or scaffolds, and no more than frequent handling, reaching, and fingering. (Tr. 16). After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of routing clerk, courier, and assembler, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 22). As a result, the ALJ found Claimant was not disabled from October 5, 2010 through the date of the decision. (Tr. 23).

Claimant first contends the ALJ failed to engage in a proper evaluation of his credibility. Claimant testified that he last worked in September or October of 2010 as a truck driver but had to stop because of pain in this shoulders, arms, and hands. (Tr. 31). Since that time, Claimant has had stents put in and had surgery on his right hand for carpal tunnel. He was undergoing physical therapy on his neck for a pinched nerve the pain from which

5

radiates down his arms and shoulders. (Tr. 32).

Claimant obtained unemployment benefits until he applied for disability. He applied for various jobs but never received an interview. (Tr. 33).

Claimant testified that in October of 2012, he injured his right shoulder and left elbow when he fell off a ladder while trying to remove a tree limb that had fallen on the house rented by he and his daughter. (Tr. 34). He stated that he tries to do something to stay busy every day such as sweep the floor, fold some clothes, or walk around the block. (Tr. 35).

Claimant stated that he can do something for about 30 minutes, and then after that time, he has to quit because of pain. He then rests for 30 to 45 minutes before doing something for 30 minutes. (Tr. 41). This remains his limitation regardless of whether he is working inside or outside. (Tr. 44). Claimant usually gets between three and three and a half hours of sleep and then he wakes up because he hurts. He will then run cold water on his hands and stretch his arms and hands to relieve his pain then return to sleep for another two to three and a half hours. He usually gets up twice in a night due to pain. (Tr. 45). Claimant states that he sometimes is out of breath after taking a shower since the placing of stents. Id. Claimant has an equal number of good days and bad

days.  On good days, he can cut a limb, pick up sticks, rake, or sweep.  On bad days, he just wants to sit in the recliner and watch television.  (Tr. 46-47).

Claimant takes pain medication, hot showers, and lays down to get relief for his neck and shoulder pain.  He also uses Icy Hot and Bengay which helps a little bit.  (Tr. 47).

When he goes shopping, Claimant usually takes his grandson with him to help push the basket and to reach up and down for items.  Claimant stated he has trouble bending, stooping, and kneeling due to a bad sciatic nerve.  Claimant also testified that sitting becomes uncomfortable after 20 to 40 minutes due to pain.  Claimant also stated he could stand for up to 20 minutes and walk for about 45 minutes or one hour depending upon the terrain before his back begins to hurt and he is required to sit.  Going up steps also bothers him and he experiences pain down the back of his leg.  (Tr. 49).  Claimant does not read much because he finds it difficult to hold a book due to his carpal tunnel syndrome.  (Tr. 50).

The ALJ cited Claimant's testimony outlining his limitations. (Tr. 17). Of course, he concludes with the oft-cited language that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for

7

the reasons explained in the decision." Id. The ALJ then proceeded to note that a 2008 MRI indicated Claimant had no more than mild degenerative change with a disc protrusion at L4-5 with other level disc bulging. Claimant returned to work without restrictions. (Tr. 18). The ALJ also acknowledged the treatment records which showed no consistent reports of problems with Claimant's carpal tunnel syndrome after he underwent release surgery in February of 2014. As for neck and shoulder pain, the ALJ found no treatment notes indicating ongoing or significant neck pain for the duration of Claimant's alleged period of disability. (Tr. 18).

The ALJ also found Claimant underwent stent placement and that the surgery had relieved much of the fatigue, shortness of breath, and chest pain from which he had suffered. His echocardiogram showed no significant abnormalities. Subsequent examinations showed Claimant to have normal chest, lung, and cardiovascular results with no complaints of chest pain or shortness of breath. (Tr. 19).

The ALJ also noted a consultative examination from March of 2012. This examination by Dr. Ronald Schatzman was essentially normal. (Tr. 19, 278-86).

The ALJ also found inconsistencies in Claimant's explanation

8

for his lack of employment. Claimant has testified that his pain and carpal tunnel syndrome made continuing his employment as a truck driver impossible. He also referenced that he was laid off. Claimant received unemployment benefits which required him to represent that he was able to work. This representation was directly contrary to his statement of disability and an inability to work. Claimant also testified to applying for jobs and his statement that he would have accepted employment if offered. (Tr. 19-20).

The ALJ also found Claimant's activities of daily living to be inconsistent with his representations of disability. His various activities were found by the ALJ to be contrary to the restrictions in function to which he testified. (Tr. 20).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or

9

other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

In this case, the ALJ thoroughly discussed the discrepancies in the Claimant's actions, the medical record, and his testimony which adversely reflected upon the credibility of Claimant's statements of limitation. The discussion contains thoughtful

10

reasoning and careful consideration of the record. No error is found in this credibility analysis.

### RFC Determination

Claimant contends the ALJ inadequately considered the effects of Claimant's carpal tunnel syndrome upon his ability to frequently finger, handle, push, and pull. Claimant cites to neither medical evidence nor functional source statements which would support such a restriction. Claimant essentially cites a condition and gleans a limitation. Without support in the record, this Court is not obligated to ferret out a foundation for Claimant's arguments. The ALJ did not err in his RFC determination.

### Duty to Develop the Record

Claimant contends the "ALJ in this case failed to fully develop the record, and the Appeals Council in this case should have remanded the case for further development" because additional evidence was needed. Claimant fails to identify specific evidence missing from the record or which should have been obtained. This argument itself fails for lack of development.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing

11

reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE